Filed 8/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAULO MORGADO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CITY AND COUNTY OF<br>SAN FRANCISCO et al.,<br><br>    Defendants and Appellants. | A157320<br><br>(San Francisco County<br>Super. Ct. No. CGC-12-518287) |

The City and County of San Francisco and affiliated defendants (collectively, the City) challenge an order requiring them to pay Paulo Morgado for future income lost due to his wrongful termination. In an earlier chapter of the litigation, we granted an alternative writ of mandate directing the trial court to clarify that order in certain respects or show cause for not doing so. In response, the court ruled that the City may not avail itself of deductions for side income Morgado earned while waiting for reinstatement.

Because the trial court's clarification order failed to resolve the issue, the parties return to this court, continuing to dispute the extent of the City's obligation to pay Morgado. The City contends *Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122 (*Davis*) and *Bevli v. Brisco* (1989) 211 Cal.App.3d 986 (*Bevli*) entitle it to the deductions it took. Morgado argues to the contrary, and further claims that even if the City's

1

reliance on *Davis* and *Bevli* was correct, its deductions were calculated incorrectly.

We agree with the City's reading of *Davis* and *Bevli* and now confirm it was correct to take deductions for Morgado's side income, but conclude the amount it deducted was incorrect. We therefore reverse the trial court's decision and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In a previous appeal, we concluded that the City's procedural approach to punishing Morgado for misconduct violated the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) by not providing him a valid avenue for administrative appeal of his 2011 termination. (*Morgado v. City and County of San Francisco* (2017) 13 Cal.App.5th 1, 12.) We also affirmed the trial court's 2014 injunctive order directing the City to vacate Morgado's termination and reinstate him pending administrative appeal. (*Id.* at p. 16.)

Morgado was duly reinstated, but was suspended without pay retroactive to his 2011 termination. He sought and in April 2018 obtained an order holding the City in contempt for its failure to comply with the prior injunction. The contempt order required the City to vacate "unconditionally" Morgado's termination and suspension, compensate him with front pay and benefits lost, and "refrain from attempts to suspend, withhold pay and benefits, and take any other action" against Morgado.

Morgado then complained the City again took the route of partial compliance. Instead of paying in full, it offset the payment owed to him based on his post-termination earnings from side income as a mortgage broker. Morgado originally did not dispute the City's claimed entitlement to an offset and suggested the issue could be worked out informally, but later

challenged any offset, claiming that as a "post-Judgment, Court-mandated obligation" the front pay could not be reduced. Even so, when asked, he provided his federal tax returns for the years he was employed as a broker and suspended as a police officer. The City used these tax returns to calculate a total offset deduction of $181,402 from what it owed Morgado.

In protest, Morgado sought and obtained a second order of contempt against the City. That order directed the City to pay Morgado the amount deducted and to re-assign him to administrative duties. The City sought review by mandamus and we granted writ relief, vacating the second order of contempt. We concluded that the order did not "rest upon a ' "clear, intentional violation of a specific, narrowly drawn order' " [citation], and therefore must be vacated without prejudice to further proceedings specifying the manner in which petitioners are directed to comply with previous judicial determinations or other legal requirements."

The parties remained in a stalemate following the issuance of our order granting writ relief. In further proceedings before the trial court, they again debated the deduction for side income, and the trial court again found the deduction inapplicable to Morgado's situation. For a second time, the court found the first contempt order barring the withholding of payments or benefits did not permit the City's deduction, and it once again ordered the City to pay the amount deducted in full to Morgado.

To break the logjam once and for all, this appeal followed.

## II. DISCUSSION

Both parties agree the sole issue on appeal is whether the front pay owed to Morgado is subject to a $181,402 deduction for side income. We review such questions of law de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799, 801.)

3

In public and private employment cases, the governing remedial principle for wrongful conduct by an employer is the same: "The remedy should 'return[] the [employee] to the financial position he would have been in had the unlawful [conduct] not occurred. . . . [T]he offending employer is made responsible only for losses suffered by the [employee] as a result of [its misconduct].' . . . ' "[W]hen a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." ' " (*Davis*, *supra*, 152 Cal.App.4th at p. 1133.) The flipside of this principle is that employees are "generally not entitled to a recovery in excess of make-whole damages." (*Id*. at p. 1134.) Thus, "courts must take care not to grant the employee a windfall" in granting relief. (*Id*. at p. 1133.)

The City argues *Davis* is controlling. To avoid granting Morgado a windfall, it contends, what it owes him should be subject to deduction. Morgado disputes this reading of *Davis*, arguing that the case dealt only with *back* pay (payment for past uncompensated work), rather than *front* pay (payment for future work lost). In his view, front pay is immune to offset.

We see no basis in logic or fairness to limit the principle of "make-whole" relief enunciated in *Davis* to the setting of back pay. The City is correct, it seems to us, that the name of the remedy makes no difference. Nor does the reason for the remedy compel Morgado's narrow reading of *Davis*. Both back pay and front pay seek to make a wrongfully terminated employee whole. Both can result in an employee receiving more than necessary to make him whole, and so both must be subject to deductions to avoid overcompensation for the harm suffered. This holds true especially for

4

Morgado's taxpayer-subsidized payment, we think. As a general matter, windfalls are to be avoided, and that is *especially* so when public funds are the source of payment.

Morgado also claims San Francisco Police Department General Order 11.02(II)(A)(3) entitles him to "engage in secondary employment and retain all income earned thereby so long as [he] obtains any necessary permission of the Chief of Police." (Italics omitted.) But that misstates the rule. Nowhere within General Order 11.02(II)(A)(3) is the word "income" mentioned; it only states that officers on suspension *may engage* in secondary employment without written permission from the Chief of Police. Furthermore, even if Morgado's assertions were true, a deduction by the City would not prevent him from retaining any income earned as a *mortgage broker*. Morgado can keep all the income earned for himself; the City is simply using that amount to offset the income he would have earned if not for his wrongful termination from his job as a *police officer*.

Having confirmed the correctness of the City's reading of *Davis*, we turn to the specific deduction taken here. Was it permissible for the City to take a deduction for income generated by "moonlighting" employment on the side? This issue is governed by *Bevli*, *supra*, 211 Cal.App.3d 986. There, the Second District held that an employer's monetary obligation to a wrongfully terminated employee "may be mitigated by deducting compensation or benefits actually received by the employee that are inconsistent with the original employment." (*Id.* at p. 994.) If the employee would have earned such income regardless of their original employment status, i.e., night or weekend work, it cannot be deducted from their wrongful termination compensation. (*Ibid.*)

5

According to the City, Morgado's mortgage broker employment would have been inconsistent with his required duties as a police officer, and as a result, under *Bevli*, it was justified in deducting $181,402 from his front pay. Morgado, on the other hand, takes the position that his mortgage broker income could not possibly be inconsistent with his job as an officer because he worked as a broker only during the four-year post-judgment period in which he could not work as an officer because the City refused to reinstate him.

Here, too, Morgado misreads the governing law. The City's refusal to reinstate him as an officer during the post-judgment period is irrelevant to the analysis. The *Bevli* rule assumes that a plaintiff's original employment continues, and it uses that assumption to determine the inconsistency of side income. (*Bevli, supra,* 211 Cal.App.3d at p. 994.) For example, in *Bevli,* the plaintiff received workers' compensation benefits after termination, but without the termination, she would have never received any benefits. (*Ibid.*) The court therefore held that these benefits could offset any possible compensation if she was found to be wrongfully terminated because the benefits were inconsistent with her employment. (*Ibid.*)

Applying the *Bevli* court's reasoning here, Morgado's employment as a mortgage broker, too, is inconsistent with his employment as a police officer. Absent his termination and suspension, Morgado would not have been able to take up secondary employment; that income simply would not have been earned. Accordingly, we conclude not only was the City entitled to take deductions for front pay, but under *Bevli* it was entitled to take deductions for Morgado's mortgage broker income.

The only remaining issue is whether the City calculated the deduction for Morgado's mortgage broker income properly. There, we conclude that Morgado has the better of the argument. The City's figure of $181,402 is

6

based on the total income Morgado made as a broker.  But Morgado claims this amount overstates his earnings, as that figure represents his pre-tax income; after taxes, he contends, he earned much less.  He argues that deducting the pre-tax income amount from his post-tax front pay left him short of the amount to which he is entitled by exposing him to extra tax liability.

We agree.  While the *Davis* and *Bevli* rules bar windfall recovery, courts are also obligated to make sure a wrongfully terminated employee receives exactly what he is owed, and not a penny less.  Taking $181,402 away from Morgado when he earned only a portion of that figure after taxes would deprive him of money that he is properly owed.  Indeed, the City agrees that its final figure "requires adjustment" to account for proper tax liability.  On remand, the parties should seek to agree upon the proper post-tax amount that may be deducted, and if they cannot agree, the trial court should decide the issue.

## III.  DISPOSITION

The trial court's ruling is reversed and the case is remanded for further proceedings consistent with this opinion.  Appellant to recover costs on appeal.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

7

| | |
|---|---|
| Trial court: | City & County of San Francisco Superior Court |
| Trial judge: | Hon. James A. Robertson II |
| Counsel for defendants and appellants City and County of San Francisco et al.: | Dennis J. Herrera, City Attorney; Katharine Hobin Porter, Chief Labor Attorney; Rafal Ofierski, Deputy City Attorney |
| Counsel for plaintiff and respondent Paulo Morgado: | Murphy, Pearson, Bradley & Feeney James A. Lassart Adrian G. Driscoll |

A157320